UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLAUDE STATEN,

                        Plaintiff,

        – against –

THE CITY OF NEW YORK,

                        Defendant.

**OPINION AND ORDER**

14 CIV. 4307 (ER)

Ramos, D.J.:

        Plaintiff Claude Staten ("Plaintiff"), proceeding *pro se*, has been employed as a police officer by the New York City Police Department ("N.Y.P.D.") for more than two decades. This action is his second before this Court against the City of New York (the "City"), an earlier-filed lawsuit based on similar facts having been dismissed at the summary judgment phase.[1] In this case, Plaintiff sues the City under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code 8-101 ("NYCHRL"), alleging that the City violated his civil rights. Specifically, Plaintiff alleges that the N.Y.P.D. subjected him to disparate treatment and a hostile work environment, and retaliated against him when he sought legal

---

[1] In the prior case, *Staten v. City of New York* ("*Staten I*"), Plaintiff sued the City of New York under 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.*, claiming, *inter alia*, that the New York City Police Department failed to promote him or grant him awards on account of his race. *See Staten I*, No. 12 Civ. 3544 (ER), 2014 WL 3907926, at *3 (S.D.N.Y. Aug. 7, 2014).

recourse.  The City now moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  For the reasons set forth below, that motion is GRANTED.

## I.    Background

### A.    Factual Background[2]

Plaintiff is a fifty-year-old Black-Hispanic male.  Am. Compl. at 3–5 (Doc. 11).  He was

first hired by the N.Y.P.D. as a police officer in 1986.  *Id.*  Since then, Plaintiff has taken the

department's exam for promotion to the rank of sergeant three times, but has never been

promoted.  *Id.* ¶ 39.

First, in or around September 1988, Plaintiff took Civil Service Examination No. 6681

("Exam No. 6681"); he received notice in 1989 that he had failed.  *Id.* ¶¶ 11–16.  However,

Plaintiff alleges that years later, in 2013, he learned that he had actually scored above the

minimum score of 70%.  *Id.*, Ex. A at 4, B at 5.[3]  Next, in March 2010, Plaintiff took and passed

Civil Service Examination No. 8564 ("Exam No. 8564").  *Id.*, Ex. I at 10.  Nevertheless, he

asserts, he was thereafter overlooked for eight separate vacancies while the list of passing

candidates eligible for a promotion to the rank of sergeant remained active.[4]  *Id.* ¶¶ 28–29.  Most

recently, in April 2012, Plaintiff passed Civil Service Examination No. 1533 ("Exam No. 1533")

but again was overlooked as the N.Y.P.D. filled at least three separate vacancies.  *Id.*, Ex. J at 11,

X at 38.  Following that exam, on June 28, 2013, Plaintiff was informed that under the Rules of

the City Personnel Director, he would be ineligible for further consideration for promotion under

---

[2] The following facts, accepted as true for purposes of the instant motion, are based on the allegations in the Amended Complaint.  *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

[3] Given the numerous unnumbered exhibits attached to the Amended Complaint, the Court's citations to them refer to the page numbers reflected on ECF.

[4] This "eligible to hire" list "consists of all candidates who passed the [relevant] exam, ranked in score order and is available to each City agency with open positions in the corresponding title.  When an agency has a hiring need, candidates are contacted for interviews in list number order."  The Civil Service System, NYC Dep't of Citywide Admin. Servs. (June 29, 2015), http://www.nyc.gov/html/dcas/html/work/civilservice_1.shtml.

the corresponding candidate list, because he had already been considered and not selected for three separate vacancies. *Id.*, Ex. X at 38; *see also* 55 R.C.N.Y. App. A. § VII, R. 4.7.4 (2014) (stating that "[f]or appointment to the position of police officer . . . , no name certified three times to one agency head shall be certified to another unless at such agency head's request."). Despite this, Plaintiff asserts that he remains a viable candidate for promotion under the Exam No. 1533 list,[5] and yet has been overlooked for fourteen vacancies since the filing of his Amended Complaint. Am. Compl. ¶¶ 37–39. Moreover, because Plaintiff was then being subjected to performance monitoring, he was required to appear before the N.Y.P.D.'s Career Advancement Review Board ("CARB") on four separate instances between 2011 and 2014 for review of his eligibility for promotion; he has been denied promotion each time.[6] *Id.* ¶ 39; Def.'s Mem. L. Supp. Mot. To Dismiss at 6.

Plaintiff concedes that on November 1, 2013, a ranking officer, Lieutenant Ferris, informed Plaintiff that he would have been promoted to sergeant from the list of candidates who passed Exam. No. 8564 if he had made more arrests. Am. Compl. ¶ 118. Moreover, Plaintiff states that, on April 24, 2014, his precinct's Commanding Officer, Deputy Inspector Christopher McCormack, informed him that a failure to write more "moving violation" summonses before his next interview with the CARB could hurt his chances at promotion. *Id.* ¶ 119.

Despite these explanations, Plaintiff believes that the N.Y.P.D. failed to promote him not as a result of his job performance but instead on grounds of racial and age discrimination. *Id.* ¶ 1. He further contends that the City, through the N.Y.P.D., created a hostile work

---

[5] Exam No. 1533 was still active—in other words, individuals who passed that exam were still eligible for promotion to the rank of sergeant—when Plaintiff filed his Amended Complaint on November 19, 2014.

[6] As explained in *Staten I*, effective March 5, 2007, Defendant placed Plaintiff on Level II performance monitoring based on his "troubling behavior," *See Staten I*, 2014 WL 3907926 at *2. "Officers placed on Level II [] monitoring may not be promoted without first appearing before the [CARB], which consists of a panel of N.Y.P.D. Chiefs tasked with assessing the merit of their application for promotion. *Id.*

environment and took actions to retaliate against him.  *Id.*  In support of these claims, Plaintiff

makes the following allegations.

On January 17, 2000, a fellow police officer, John McGlocklin made a racially

disparaging joke about African-American prisoners to another officer in Plaintiff's presence.  *Id.*

¶ 96.  In the same vein, Plaintiff alleges that during the summer of 2006, Captain Donald

McHugh referred to him in derogatory terms, comparing him to female genitalia.  *Id.* ¶¶ 142–44.

Plaintiff also alleges that on February 19, 2006, he overheard police officer Gregory Manning

refer to him as a "nigger."  *Id.* ¶ 63.  Plaintiff asserts that his efforts to seek relief through both

the P.B.A. and the N.Y.P.D.'s Office of Equal Employment Opportunity ("O.E.E.O.") between

2006 and 2007 were ineffective.  *Id.* ¶¶ 65–85.  He claims that he attempted to file complaints

with both offices against Officer Manning and his then-Commanding Officer, Deputy Inspector

Kevin Harrington, who he believed was trying to thwart his career advancement.  *See id.* ¶ 75.

Though logically circular, Plaintiff claims that the P.B.A. and the O.E.E.O. refused to assist

Plaintiff in retaliation because he tried to file a complaint with them.  *See id.* ¶ 84.  He also

claims that he did not receive his Patrolmen's Benevolent Association ("P.B.A.") cards between

2009 through 2012 because of Manning's influence with the union.[7]  *Id.* ¶¶ 60–64.

Furthermore, Plaintiff alleges that in or about August 2006, Captain McHugh told

Plaintiff over the phone that McHugh would force him to retire.  *Id.* ¶ 124.  Plaintiff further

alleges that, on August 17, 2006, Officer James Lisa told him that Deputy Inspector Harrington

wanted him to retire.  *Id.* ¶ 125.  Plaintiff also claims that his co-workers belittle him and tell him

that he is too old to be promoted, but does not offer any specific examples of such remarks.  *Id.* ¶

---

[7] P.B.A. cards are union membership cards, traditionally given to friends and family of police officers, that are used
to distinguish the cardholder as an individual "with a special connection to a police officer and deserving of a
courtesy."  Corey Kilgannon, A Perk for Friends of the Police, Now on eBay, N.Y. Times (January 11, 2006).
http://www.nytimes.com/2006/01/11/nyregion/11cards.html?_r=0.

128.  During that same month, Plaintiff also claims that the N.Y.P.D. violated his Second Amendment rights by withholding his firearms from him for non-disciplinary reasons.  *Id.* ¶¶ 105–17.  See also Id., Ex. Based on these events, Plaintiff believes that Defendant refuses to promote him in the hopes that Plaintiff will retire out of "embarrassment" or "frustration."  *Id.* ¶ 129.

On October 15, 2009, Plaintiff was charged with violating N.Y.P.D. department regulations by:  (1) failing to properly submit issued summonses; (2) failing to properly secure his locker, where he had stored the summonses; and (3) failing to appear in Traffic Court for testimony.  *Id.*, Ex. N at 17–19.  Plaintiff alleges that Officer Lisa, a white male, entered his locker without his consent, stole Plaintiff's issued summonses,[8] and left a note in order to prevent him from processing the summonses.[9]  *Id.*, Ex. H at 9, M at 16, N at 18–19.  However, an internal investigation report states that, although Officer Lisa entered Plaintiff's locker without permission and left the note, Lisa did not remove the summonses, which were subsequently found by the precinct's Integrity Control Officer in Plaintiff's locker.  *Id.*, Ex. N at 18–19.

Plaintiff also claims that Defendant failed to recognize his "acts of bravery and heroics" when he was involved in two shooting incidents in 1996 and 2000, but has recognized and given preferential treatment to white officers involved in similar shooting incidents, such as by awarding them special assignments.  *Id.* ¶¶ 145–58, 188–96, Ex. F at 6–7, G at 8.  Conversely,

---

[8] Pursuant to N.Y.P.D. Patrol Guidelines, issued summonses must be submitted to a designated location in a timely fashion.  Am. Compl., Ex. N at 17–19.

[9] The note stated:  "Claude, this was an MOS's girlfriend.  Thanks, Jim L".  Am. Compl., Ex. M at 16.  *See also* Cop Slang, Police Magazine (June 29, 2015), www.policemag.com/cop-slang/mos.aspx (explaining that "MOS" is N.Y.P.D. slang for "Member of the Service").

Plaintiff insinuates, Defendant has given him assignments unbefitting of his seniority.  *See id.* ¶¶ 93–94.

Plaintiff draws further comparisons between his own experience and the experiences of three white officers who were promoted to become sergeants based on Exam No. 8564 and Exam No. 1533 despite their tarnished disciplinary records.  *See id.* ¶¶ 31–33, 165–74, Ex. L at 13–15. Specifically, he claims that in July 2011, Officer Stephen Wheeler, who scored lower than Plaintiff on Exam No. 8564, was promoted to Sergeant despite having been arrested and subject to disciplinary charges in 2006.  *Id.* ¶¶ 31–33.  Plaintiff also points to Officers Elana Stojanovski and Thomas Kurilenko, both of whom were promoted despite scoring lower than Plaintiff on Exam No. 1533.  *Id.* ¶¶ 165–74.  Plaintiff claims that Stojanovski had been previously disciplined for fighting with another officer while on duty and also received no disciplinary charges after the N.Y.P.D.'s Absence Control Unit discovered that she was out of the country while on sick leave.  *Id.* ¶¶ 165–68.  Plaintiff alleges that Kurilenko was previously arrested for a bar-related incident while off-duty.  *Id.* ¶ 170.  In addition to his own experience, Plaintiff compares the treatment of these white officers with the experiences of other minority officers, who were also subjected to racial or religious discrimination.[10]  *See id.* ¶¶ 87–92, 175–87, 227–31.

Plaintiff next claims that in 2006, Defendant conspired with Deputy Davis and Lieutenant Boyd of the Sullivan County Sheriff's Department to implicate him in a domestic dispute between Plaintiff's girlfriend and his common law wife.  *Id.* ¶¶ 235–48.  He also claims that

---

[10] Plaintiff alleges that Captain Keith Walton, a black man and newly appointed executive officer of Plaintiff's precinct, was effectively segregated because Walton was set up in a new office, whereas the commanding officer and executive officer previously shared the same office.  Am. Compl. ¶¶ 175–82.  Plaintiff also claims that Deputy Inspector McCormack racially discriminated against Officer Dino Davila, a Hispanic male, by calling him a "zero." *Id.* ¶¶ 183–87.

seven years later, in furtherance of this alleged conspiracy, in August 2013, Deputy Davis, who is now employed by the Monticello Police Department, ordered a subordinate to issue Plaintiff's wife a speeding summons in retaliation. *Id.* ¶¶ 249–57. Plaintiff further alleges that on December 5, 2013, the Monticello Police Department harassed his wife by stopping her car because she was black. *Id.* ¶¶ 256–57.

Additionally, Plaintiff asserts that in January 2011, Defendant intercepted and withheld a notification requesting his presence at a training course for sergeant candidates for those who passed Exam No. 8564, in a deliberate attempt to stymie his career advancement. *See id.* ¶¶ 97–101. *See also id.*, Ex. P at 26. He also claims that in September and October 2013, Defendant conducted a verification of his compliance with the N.Y.P.D.'s residency requirement as a pretense to harass him. *See id.* ¶¶ 130–40, Ex. V at 34–36.[11]

In the last of his allegations, Plaintiff claims that his supervisor, Lieutenant Schelberger, discriminated and retaliated against him based on his race by placing him in dangerous situations—specifically, by ordering him to exit his patrol car in a dangerous section of the Bronx on June 20 and July 20, 2014, and by ordering him and his partner to transport a female prisoner while in the presence of a hostile crowd on July 12, 2014. *Id.* ¶¶ 197–217. Moreover, Plaintiff claims that he has been assigned to the barrier section in Long Island City, Queens at least twice per month since September 2014 as "retaliation for being Black-Hispanic," because the work involves manual labor and is located far from his residence. *Id.* ¶¶ 218–22. Finally, Plaintiff alleges that Defendant has failed to provide him with a new bullet proof vest since 2003, despite providing other officers with new police vests at no cost. *Id.* ¶¶ 223–26.

---

[11] Plaintiff alleges that N.Y.P.D. officers are required to reside in either Suffolk, Westchester, Orange, Rockland, Nassau, Putnam, Queens, Bronx, Brooklyn, Manhattan, or Staten Island counties. Am. Compl. ¶ 132. Although Plaintiff owns houses in both Orange and Sullivan counties, he claims that he is in compliance with the residency requirement because Orange County is his primary residence. *Id.* ¶¶ 133–37.

### B. Procedural History

Plaintiff first filed suit in this Court on May 3, 2012 (*Staten I*) pursuant to 42 U.S.C. §§ 1981 and 1983, the NYSHRL, and the NYCHRL.  Compl. at 1−2, *Staten I*, 2014 WL 3907926 (No. 12 Civ. 3544).  This Court dismissed *Staten I* on August 7, 2014, following Defendant's motion for summary judgment.  In the instant action, Plaintiff raises new allegations, along with those initially raised in *Staten I*, to support his claims under Title VII, the ADEA, the NYSHRL, and the NYCHRL.

Prior to commencing the instant action, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 13, 2013.  Pl.'s Opp'n to Def.'s Mot. To Dismiss (Doc. 17), Ex. ZG.  However, unable to substantiate Plaintiff's claims, the EEOC closed its file on May 29, 2014 and issued him a Notice of Right to Sue letter.  Am. Compl. at 8.

Plaintiff filed the instant action on June 16, 2014.  Compl. at 1 (Doc. 1).  Liberally construed, Plaintiff's Amended Complaint asserts six claims:  (1) Defendant's failure to promote him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (2) Defendant's failure to promote him in violation of the Age Discrimination in Employment Act of 1967; (3) creation of a hostile work environment; (4) retaliation; (5) race and age discrimination in violation of the New York State Human Rights Law; and (6) race and age discrimination in violation of the New York City Human Rights Law.  *Id.* ¶¶ 1−4.

## II.   Relevant Legal Standards

### A. 12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in

the plaintiff's favor.  *Walker*, 717 F.3d at 124.  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'"  *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) (citation omitted); *see also Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) (finding pleadings based upon information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions).

### B.  Employment Discrimination Cases

In a discrimination action, the *Iqbal* plausibility standard applies in conjunction with the standard for pleading employment discrimination.  The Supreme Court has held that in an employment discrimination action, a complaint need not contain specific facts that establish a *prima facie* case of discrimination.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002); *E.E.O.C. v. Port Auth. of New York and New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (recognizing that "*Swierkiewicz* has continuing viability, as modified by *Twombly* and *Iqbal*"); *Trachtenberg v. Dept. of Educ. of City of New York*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) ("The Second Circuit has suggested that at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a *prima facie* case is not required.") (internal quotation marks and citations omitted).  However, the elements of a *prima facie* discrimination case "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Trachtenberg*, 937 F. Supp. 2d at 465 (citing *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. Feb. 7, 2013)).  Thus, "[i]n the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Id.* (citing *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012)).

### C.  Pro Se Plaintiff

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing

*Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### D.  Res Judicata

Although, res judicata generally is an affirmative defense pleaded in the defendant's answer, *see Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (citing Fed. R. Civ. P. 8(c)), "when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Id.*  (citing *W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons*, 186 F.2d 236, 237 (2d Cir. 1951)).  Accordingly, "[a] court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (citing *Day*, 955 F.2d at 811).

In considering a motion to dismiss, a court may take judicial notice of public records, including complaints and other documents filed in federal court.  *See Harrison v. Diamonds*, No. 14 Civ. 484 (VEC), 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) (citing *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 351-52 (E.D.N.Y. 2010)).  The court takes judicial notice of such documents "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774

(2d Cir. 1991).  Given that Defendant's motion is predicated on prior litigation in this district, the Court takes judicial notice of the documents filed in connection with *Staten I*.

## III.   Discussion

### A.  Claim Preclusion

Defendant argues that Plaintiff's claims in the instant case are wholly, or at least partially, barred by the doctrine of res judicata, also referred to as claim preclusion.  In order to assert an affirmative defense of claim preclusion, a party must show that an earlier decision was:  (1) a final judgment on the merits made by a court of competent jurisdiction; (2) in a case involving the same parties or their privies; and (3) involving the same cause of action.  *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) (quoting *Hecht v. United Collection Bureau, Inc.*, 691 F.3d, 218, 221-22) (2d Cir. 2012) (internal quotation marks omitted).

"Whether a claim that was not raised in the previous action could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'"  *TechnoMarine*, 758 F.3d at 499 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)).  The question of whether two actions arise from the same transaction or claim is addressed by determining if the "underlying facts are related in time, space, origin, or motivation," the extent to which "they form a convenient trial unit," and whether such treatment "conforms to the parties' expectations or business understanding or usage."  *Id.* (quoting *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001)).  The claim or cause of action is comprised of the "identity of facts surrounding the occurrence," and not the legal theory used to frame a complaint.  *Woods*, 972 F.2d at 39 (citing *Berlitz Sch. of*

12

*Languages of Am., Inc v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980)).  Moreover, the

Second Circuit has held claim preclusion to be applicable even "where some of the facts on

which a subsequent action is based post-date the first action but do not amount to a new claim."

*TechnoMarine*, 758 F.3d at 502 (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383–83

(2d Cir. 2003).

      Here, there is no dispute that this Court's grant of summary judgment in favor of the City

in *Staten I* constituted a final judgment on the merits involving the same litigants represented in

the instant action.  The issue is whether or not Plaintiff could have raised his Title VII and

ADEA claims in the previous action instead.[12]

     **i.  Failure to Promote**

      Plaintiff's failure to promote claims are barred by claim preclusion because they arise

from the same connected series of transactions and form a "convenient trial unit" that would

have "conform[ed] to the parties' expectations." *TechnoMarine*, 758 F.3d at 499; *see also Bey v.

City of New York*, 454 F. App'x 1, 5 (2d Cir. 2011) (holding that "res judicata applies to pro se

plaintiffs whose claims in a second action are based on the same factual predicates presented in

the first action").

      *Staten I* was premised on Defendant's allegedly discriminatory motives in refusing to

promote Plaintiff from the Exam No. 8564 list on multiple occasions.  In the instant action,

---

[12] In *Staten I*, Plaintiff did not raise his retaliation, age discrimination, hostile work environment, or unequal terms and conditions claims, despite having the opportunity to do so given that many of the underlying factual predicates asserted in the instant action in support of that claim already existed when the earlier action was filed.  Nevertheless, these claims are not precluded because they arise from different transactions and require factual support separate and distinct from the factual support proffered in support of Plaintiff's claims based on the N.Y.P.D.'s failure to promote him.  *See Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 281 (2d Cir. 2008) (holding that claim preclusion does not bar claims that could have been raised concurrently in a prior suit, but are based on factually separate transactions).  *See also Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (holding that "[claim preclusion] does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit.") (citing *SEC v. First Jersey Sec, Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996).  Therefore, this Court only addresses claim preclusion's applicability to Plaintiff's failure to promote claims.

Plaintiff again raises Defendant's failure to promote him, adding allegations based on Exam No. 6681 and Exam No. 1533 to further support his claims. Plaintiff's inclusion of the new exams only serves to provide additional supportive examples rather than to form any new, distinct bases for Plaintiff's claims. *See Jean-Gilles v. Cnty. of Rockland*, 463 F. Supp. 2d 437, 454 (S.D.N.Y. 2006) (holding that "[claim preclusion] applies to facts learned after the filing of the earlier complaint when such facts are merely additional examples of the earlier-complained of conduct.") (internal quotation marks omitted) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000)).  Plaintiff does not allege any material differences in the examination content or procedures to suggest otherwise.  Accordingly, Plaintiff's failure to promote claims in *Staten I* and the instant action form a convenient trial unit that could have been adjudicated in one proceeding.

This is compounded by the fact that Plaintiff's allegations involving Exam No. 6681 took place in 1988—26 years prior to filing the instant complaint—and therefore could have been raised concurrently when Plaintiff filed *Staten I* on May 3, 2012.  Moreover, the fourteen times Plaintiff was passed over for promotion pursuant to Exam No. 1533 all occurred between December 2012 and October 2014,  and therefore could not have been raised when *Staten I* was filed.  Am. Compl. ¶ 38.  However, because a candidate is no longer eligible for promotion from the active exam list after being considered and not selected three times, Plaintiff's candidacy for promotion based on Exam No. 1533 effectively terminated on his third "non-promotion" on May 27, 2013, thus vitiating Plaintiff's subsequent eleven allegations that occur after that date.  Def.'s Mem. L. Supp. Mot. To Dismiss at 4.

Nonetheless, at least six of Plaintiff's fourteen non-promotions occurred prior to 2014, well before the October 31, 2013 date by which the parties were ordered to complete discovery.

14

May 17, 2013 Order, *Staten I*, 2014 WL 3907926 (No. 12 Civ. 3544).  Given the sixteen-month

period between April 9, 2012, when Plaintiff received word that he had passed Exam No. 1533,

and August 7, 2014, when this Court granted summary judgment to the City in *Staten I*, Plaintiff

had ample opportunity to amend his complaint to include his Exam No. 1533 grievances.  *See*

Am. Compl., Ex. J at 11; *Staten I*, 2014 WL 3907926.

Furthermore, although the alleged events involving Exam No. 1533 occurred after

Plaintiff filed *Staten I*, Plaintiff relies on those events only to allege the same cause of action—

failure to promote—that he brought in his earlier lawsuit.  He does not argue that the claims

arising from Exam No. 1533 create a cause of action that could not have been litigated in *Staten

I*.  Moreover, although Plaintiff additionally bases his claim on the ADEA in the instant action,

the use of an alternative legal theory has no effect on the applicability of claim preclusion where

the cause of action remains the same.  *See Malcolm v. Bd. of Educ. of Honeoye Falls-Lima Cent.

Sch. Dist.*, 506 F. App'x 65, 69 (2d Cir. 2012).  Therefore, because these claims should have

been raised in *Staten I*, they are now precluded.

### B.  Statute of Limitations

In order to file suit under Title VII or the ADEA, a plaintiff must first file a timely charge

with the EEOC.  *See Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011).  In states like New

York, where an administrative body—in New York's case, the State Division of Human Rights

(SDHR)—is empowered to review employment discrimination claims, a Title VII or ADEA

claim must be brought in that forum within 300 days of the alleged unlawful conduct in order to

be considered timely.  *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); *see also Harris

v. City of New York*, 186 F.3d 243, 247 n.2 (2d Cir. 1999) (noting that "the existence of [the

SDHR] makes New York a so-called deferral state for Title VII" purposes, such that the 300-day

15

limitations period governs).  "A claim is time barred if it is not filed within these time limits."
*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Here, Plaintiff filed a charge of discrimination with the EEOC on December 13, 2013.
Pl.'s Opp'n to Def.'s Mot. To Dismiss, Ex. ZG.  Accordingly, any alleged violations of Title VII
or the ADEA that occurred prior to February 16, 2013 necessarily fall outside of the 300-day
filing period.  The majority of Plaintiff's allegations—including that he was subjected to
offensive comments, deprived of recognition, and assigned to two posts at the same time—
occurred prior to February 16, 2013.  Therefore, with the exception of Plaintiff's hostile work
environment claim, all of these allegations are time-barred.

In his opposition papers, Plaintiff concedes that many of his allegations are time-barred.
Pl.'s Opp'n to Def.'s Mot. To Dismiss at 16.  Nevertheless, he argues that his allegations
demonstrate on-going discriminatory conduct and can thus be construed as implicating the
"continuing violation doctrine" to preserve his untimely claims.  *See* Pl.'s Opp'n to Def.'s Mot.
To Dismiss at 23.

Under the continuing violation doctrine, "[w]here a plaintiff can demonstrate an ongoing
or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit
challenging all conduct that was part of the violation, even conduct that occurred outside the
limitations period."  *Ruane v. Cnty. of Suffolk*, 923 F. Supp. 2d 454, 459 (E.D.N.Y. 2013)
(internal quotation marks omitted).  However, "courts of this circuit consistently have looked
unfavorably on continuing violation arguments . . . and have applied the theory only under
compelling circumstances."  *Id.*  (quoting *Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 207
(E.D.N.Y. 1993)).  Where particular acts serve to put a plaintiff on notice of his claim, the
continuous violation doctrine is inapplicable, even if there were subsequent acts constituting a

16

violation. *See Kellogg v. New York State Dep't of Corr. Servs.*, No. 07 Civ. 2804 (BSJ), 2009
WL 2058560, at *1 (S.D.N.Y. July 15, 2009) ("[T]he continuing-violation doctrine does not
apply to discrete acts, but only to ongoing circumstances that combine to form a single violation
that cannot be said to occur on any particular day."); *see also Libbey v. Vill. of Atl. Beach*, 982 F.
Supp. 2d 185, 212, No. 13 Civ. 2717 (JS), 2013 WL 5972540, at *20 (E.D.N.Y. Nov. 4, 2013)
(finding no continuing violation despite allegations that "span[ned] several years" where time-
barred conduct was a discrete act occurring on a specific date).

    Plaintiff's claims, with the exception of his hostile work environment claim, are all based
on discrete acts occurring on specific dates that do not constitute a single violation. *See Valtchev
v. City of New York*, 400 F. App'x 586, 588–89, (2d Cir. 2010) (finding that Plaintiff's
allegations of being "denied promotions and advancements" and other retaliatory events did not
constitute a "long-standing policy and practice" and therefore did not trigger the continuing
violations doctrine); *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 157 (2d
Cir. 2012) (explaining that "an employer's failure to promote is by its very nature a discrete
act"). Accordingly, the continuing violation doctrine cannot save Plaintiff's untimely allegations
from dismissal.

    With respect to Plaintiff's hostile work environment claim, the Supreme Court has held
that hostile work environment claims do not constitute discrete acts because they involve
repeated conduct. *See Morgan*, 536 U.S. at 115. Given the repetitive nature of such claims, the
scope of a hostile work environment claim may encompass "behavior alleged outside the
statutory time period . . . so long as an act contributing to that hostile environment takes place
within the statutory time period." *Morgan*, 536 U.S. at 105. However, the timely event must be
"sufficiently related to the prior events so that they can be said to be part of the 'same' hostile

work environment." *Sanderson v. New York State Elec. & Gas Corp*, 560 F. App'x 88, 91 (2d Cir. 2014) (citations omitted).

While Plaintiff makes a number of timely allegations in support of his hostile work environment claim, each allegation constitutes a discrete act that bears no sufficient relation to any of Plaintiff's time-barred allegations.[13]  *See De La Pena v. Metropolitan Life Insurance Co.*, 552 F. App'x 98, 99, (2d Cir. 2014) (holding that hostile work environment allegations that "amount to discrete incidents unrelated to an identifiable policy or practice . . . [do not] ordinarily amount to a continuing violation") (internal quotation marks omitted).  For instance, Plaintiff has not offered evidence that would demonstrate that his assignment to the barrier section was not a discrete act and also was somehow sufficiently related to Plaintiff's untimely allegation that he was subjected to offensive comments from fellow officers.  Accordingly, Plaintiff's time-barred allegations cannot support his hostile work environment claim.

### C.  Failure to State a Claim

The Court now addresses those allegations of Plaintiff's that are not barred by claim preclusion or the statute of limitations.

### i.      Retaliation

To state a claim for retaliation under Title VII, an employee must show that:  (1) he was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) he suffered a materially adverse action; and (4) there is a causal connection between his protected activity and the materially adverse action.  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citations omitted).  While a protected activity generally involves the filing of a lawsuit or

---

[13] Plaintiff's timely allegations in support of his hostile work environment claim comprise: (1) Schelberger's order to exit the patrol car; (2) Schelberger's order to arrest; (3) assignment to the barrier section; (4) Defendant's verification of Plaintiff's residence in or around September and October 2013.  Am. Compl. ¶¶ 197–217.

a formal complaint of discrimination with an administrative agency, *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992), the Second Circuit has recognized that "protected activity" may also include "informal protests of discriminatory employment practices, including making complaints to management." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (citations omitted).  Additionally, a plaintiff may establish the causal connection requirement either directly, by offering evidence of retaliatory animus, or indirectly, by demonstrating that the protected activity was followed in close proximity by the adverse treatment.  *Id.* at 209 (citations omitted).  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations omitted); *see also Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 n.5, 554-55 (2d Cir. 2001) (collecting cases); *Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 528-29 (S.D.N.Y. 2007) (same), *aff'd*, 288 F. App'x 757 (2d Cir. 2008).

In both his Amended Complaint and his Opposition to Defendant's Motion to Dismiss, Plaintiff uses the term "retaliation" incorrectly, seeming to conflate his disparate treatment and hostile work environment claims with his retaliation claim.  For instance, Plaintiff alleges that he has been retaliated against because of his "race."  *See* Am. Compl. ¶ 210; Pl.'s Opp'n to Def.'s Mot. To Dismiss at 21.  But "retaliation," as a legal cause of action, refers not to racial discrimination but to adverse employment action taken against an individual as a result of their engagement in protected workplace activity.  None of Plaintiff's allegations state a claim for

retaliation as a matter of law.  Plaintiff's characterization would only be appropriate if Plaintiff had engaged in some protected act that subsequently triggered some retaliatory action.[14]

## ii.      Failure to Promote

In his Amended Complaint, Plaintiff timely alleges that the N.Y.P.D. CARB failed to promote him on September 10, 2014.  *See id.* ¶ 39.  To establish a discrimination claim based on Defendant's failure to promote, Plaintiff must demonstrate that (1) he is a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having his qualifications.  *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004).  With respect to the third prong, the Second Circuit has held that a plaintiff must prove that he was "rejected under circumstances which give rise to an inference of unlawful discrimination."  *Aulicino v. N.Y.C. Dep't. of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998).

Here, Plaintiff has sufficiently pleaded the first two prongs because he has established that he is a Black Hispanic and has passed the sergeant's exam.  However, Plaintiff fails to plead any timely facts supporting an inference of discriminatory motive pursuant to the Board's decision not to promote him.  He only offers conclusory statements alleging that Defendant has "blacklisted" him and has generically violated his rights.  Am. Compl. ¶ 39.

Plaintiff also argues that this Court must draw an inference of discrimination from Plaintiff's allegations that his co-workers, either similarly situated or less-qualified than him, were promoted to Sergeant because they were white.  Am. Compl. ¶ 174.  The Second Circuit has held that an inference of racial discrimination may be drawn from the fact that employees of

---

[14] Plaintiff does makes an allegation in his Amended Complaint that arguably states a claim for retaliation. However, his allegation that Defendant retaliated against him for filing an internal O.E.E.O. complaint, is time-barred.  *See* Am. Compl. ¶ 57–84.

a different race, but otherwise "similarly situated in all material respects," were treated more favorably. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999).

Here, Plaintiff specifically alleges that Elena Stojanovski and Thomas Kurilenko, two white police officers working in the same precinct as Plaintiff, were both promoted over him and thus treated more favorably.  However, he fails to establish that either officer was similarly situated or less qualified.  As comparison, Plaintiff offers only his allegations that both Stojanovski and Kurilenko scored lower than him on Exam No. 1533 and had blemished disciplinary records.  Am. Compl. ¶¶ 165–174.  Plaintiff fails to provide sufficient factual support regarding his comparators' work performances, disciplinary records, or otherwise to substantiate any meaningful comparison.  Accordingly, Plaintiff's failure to promote claim must be dismissed.  *See Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (holding that employee had failed to raise an inference of discrimination to support his failure to promote claim due to his failure to allege that he was treated differently than similarly situated employees); *see also Yu v. N.Y.C. Housing Development Corp.*, 494 F. App'x 122, 125 (2d Cir. 2012) (explaining that where an employer articulates a "legitimate, nondiscriminatory reason for [an] employee's rejection … the plaintiff must show that the reasons presented were not the employer's true reasons, but were instead a pretext for discrimination.") (internal quotation marks and citations omitted).

### iii.    Age Discrimination

The ADEA makes it unlawful for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's age."  29 U.S.C. § 623(a)(2); *see also id.* § 631(a) (establishing that the ADEA applies only to individuals who are at least 40 years of age).  To

establish age discrimination, a plaintiff must demonstrate (1) membership in a protected class[15];

(2) qualification for the position; (3) an adverse employment action; and (4) circumstances

supporting an inference of age discrimination.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496

F.3d 229, 238 (2d Cir. 2007) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir.

2000)).

      Plaintiff was 48 years old when he filed his EEOC charge on December 13, 2013,

alleging that Defendant had failed to promote him on account of his age.  Pl.'s Opp'n to Def.'s

Mot. To Dismiss, Ex. ZG.  Accordingly, he has adequately pleaded that he belongs to a protected

class and was subjected to an adverse employment action.  Yet he offers no factual support for

his assertion that he was overlooked for a promotion because of his age.  Plaintiff alleges that an

inference of discrimination should be drawn from questions about retirement posed to him by

Defendant's counsel during a deposition taken during the discovery phase of *Staten I*.  Am.

Compl. ¶ 122–23.  However, in support of this allegation, Plaintiff merely states that he felt

offended after being asked if he was eligible for retirement and why he had not retired yet.  *Id.*

Without more, Plaintiff's allegations do not present circumstances supporting an inference of age

discrimination.  *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (holding that

"[s]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make

out a case of employment discrimination.").  Therefore, Plaintiff's age discrimination claim must

be dismissed.

### iv.    Hostile Work Environment

      "In order to establish a hostile work environment claim under Title VII, a plaintiff must

produce enough evidence to show that 'the workplace is permeated with discriminatory

---

[15] The ADEA protects employees who are at least 40 years old.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d
93, 107 (2d Cir. 2010) (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)).

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski*, 596 F.3d at 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).  To establish objective and subjective hostility, "a plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (emphasis in original); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (race discrimination).

In considering whether a plaintiff has met this burden, courts should "examin[e] the totality of the circumstances, including:  the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Isolated incidents of harassment, unless sufficiently "severe," usually will not suffice to establish a hostile work environment.  *See, e.g., Pucino*, 618 F.3d at 119; *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010); *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

Individual incidents, however, must not be viewed in isolation.  In assessing the evidence to determine whether a rational juror could infer that a reasonable employee would have found the abuse so pervasive or severe as to alter her working conditions, "the court should not view the record in piecemeal fashion." *Kaytor*, 609 F.3d at 548 (internal quotation marks and citation

omitted).  "The objective hostility of a work environment depends on the totality of the circumstances," viewed from "the perspective . . . of a 'reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target.'"  *Petrosino*, 385 F.3d at 221 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Nonetheless, while Title VII's "central statutory purpose" is to eradicate employment discrimination, *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 771 (1976), it "does not set forth 'a general civility code for the American workplace.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006) (quoting *Oncale*, 523 U.S. at 80).  In *Oncale*, the Supreme Court noted that "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."  523 U.S. at 81 (quoting *Forklift*, 510 U.S. at 21).  The Court noted that it regarded the objective component both as "crucial[] and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace . . . for discriminatory 'conditions of employment.'"  *Id.*

Here, Plaintiff bases his hostile work environment claim on three allegations: (1) Lieutenant Schelberger intentionally gave Plaintiff dangerous work assignments or orders on June 20, July 12, and July 20, 2014 on account of his race; (2) Defendant assigned him to the "barrier section" twice per month in the three months prior to filing the instant action; and (3) Defendant's verification of Plaintiff's residency in or around September and October 2013 constituted a sufficiently severe episode of harassment that created a hostile work environment. Am. Compl. ¶¶ 197–217.

But aside from his own speculation, Plaintiff offers nothing to suggest that any of these three allegations were based on some discriminatory motive, such as Plaintiff's race. *See Guzman v. City of New York*, No. 13 Civ. 5445 (GHW), 2015 WL 1239988, at *12 (S.D.N.Y. 2015) (holding that Plaintiff's hostile work environment claims must be dismissed because Plaintiff failed to demonstrate that Defendants' alleged hostile conduct was predicated on Plaintiff's "color, race, gender, or pregnancy status") (citing *Nwanji v. City of New York*, No. 98 Civ. 4263 (RLE), 2000 WL 1341448, at *3, *5 (S.D.N.Y. 2000)); *see also Barounis v. N.Y.C. Police Dep't*, No. 10 Civ. 2631 (SAS), 2012 WL 6194190, at *13 (S.D.N.Y. 2012) (dismissing hostile work environment claim where Plaintiff failed to offer evidence that Defendant's creation of an "unpleasant environment" was "the result of discriminatory animus based on plaintiff's race"); *Payami v. City of New York*, No. 03 Civ. 2785 (LAP), 2007 WL 945529, at *7 (S.D.N.Y. 2007) (dismissing hostile work environment claim because Plaintiff's alleged instances of harassment failed to insinuate "beyond Plaintiff's speculation, that the alleged actions were motivated by his race or ethnicity.").  Consequently, this Court declines to draw any inference of discrimination and Plaintiff's hostile work environment claim must be dismissed.

### v.  Unequal Terms and Conditions of Employment

"In order to maintain a Title VII unequal terms and conditions claim, the Plaintiff must establish that:  (1) he belongs to a protected class of persons; (2) his job performance was satisfactory; (3) he suffered some adverse employment action; and (4) the adverse employment action occurred under conditions giving rise to an inference of discrimination." *See Smith v. St. Luke's Roosevelt Hosp.*, No. 08 Civ. 4710 (GBD) (AJP), 2009 WL 2447754, at *22 (S.D.N.Y. 2009) (quoting *Holder v. City of Yonkers*, No. 04 Civ. 10314 (LMS), 2006 WL 1582081, at *8 (S.D.N.Y. 2006)).

In support of his unequal terms and conditions claim, Plaintiff alleges that Defendant failed to replace his expired bullet proof vest without charge and informed Plaintiff that he would need to purchase a new one, despite providing new vests to other officers for free.  Am. Compl. ¶¶ 223−226.  Construing Plaintiff's allegations in the most favorable light, Plaintiff adequately pleads the first three elements of his unequal terms and conditions claim, but fails to proffer factual support for his contention that Defendant neglected to provide him with a new vest as an act of discrimination.  Accordingly, this Court declines to draw any inference of discrimination and Plaintiff's unequal terms and conditions claim must be dismissed.

### vi.    Second Amendment Violation

Given Plaintiff's status as a pro se litigant, the Amended Complaint might be liberally construed as asserting a claim under § 1983 that Defendant violated his Second Amendment rights by withholding his firearms from him in 2006.  Am. Compl. ¶ 109−17.  *See Moreno v. N.Y.C. Police Dep't*, No. 10 Civ. 6269 (DAB)(RLE), 2011 WL 2748652, at *2 (S.D.N.Y. 2011); 42 U.S.C. § 1983 (1996).  However, that claim fails for two reasons.  First it is barred as beyond the limitations period.  *Kelly v. City of New York*, 576 F. App'x 22, 23 (2d Cir. 2014) (explaining that "[i]n New York, § 1983 actions must be brought within three years of the accrual of the claim" and that such a claim accrues "when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.").  Second, Plaintiff fails to establish a denial of his Second Amendment rights because the N.Y.P.D. may reasonably restrict an officer's firearm usage as a condition of employment.  *See Montalbano v. Port Authority of New York and New Jersey*, 843 F. Supp. 2d 473, 481−82 (S.D.N.Y. 2012) (holding that the Port Authority imposed a "reasonable restriction" on firearm use as a condition of employment and is not precluded from doing so by the Second Amendment).

26

### D.  Failure to Exhaust Administrative Remedies

Because this Court has dismissed Plaintiff's Title VII and ADEA claims, Defendant's argument that Plaintiff failed to exhaust all administrative remedies before bringing suit in federal court need not be addressed.[16]

### E.  State Law Claims

In addition to his claims under Title VII and the ADEA, Plaintiff alleges state law claims for violations of the NYSHRL and NYCHRL.  Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction.  28 U.S.C. § 1367(c)(3) (1990).

Subject matter jurisdiction in the instant action is based on federal question jurisdiction. 28 U.S.C. § 1331.  All of the Complaint's federal claims must be dismissed.  *See supra* Part III.A-D.  Because no federal claims remain that are subject to a merits determination by this Court, it would be inappropriate to adjudicate Plaintiff's state law claims.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan v. Aldana-Bernier*, No.

---

[16] If the Court were to address the exhaustion issue, it would find that Plaintiff did exhaust all administrative remedies before filing the instant action.  Litigants are required to exhaust available administrative remedies before filing suit under Title VII and the ADEA.  *See Best v. Duane Reade Drugs*, No. 14 Civ. 2648 (CM), 2014 WL 5810105, at *3 (S.D.N.Y. 2014) (explaining that the exhaustion requirement provides the EEOC with "notice of an employee's complaint and the opportunity to investigate the matter and take remedial action") (citing *Stewart v. INS*, 762 F.2d 193, 198 (2d Cir. 1985).  On his EEOC Intake Questionnaire form, Plaintiff checked off boxes referring to employment discrimination based on race, age, retaliation, and color.  *See* Pl.'s Opp'n to Def.'s Mot. To Dismiss, Ex. ZG.  Furthermore, in an addendum attached to the form in response to Question 8, Plaintiff explicitly states that he has been subjected to "harassment to date" and a "hostile work environment."  *Id.*  Therefore, with the exception of his unequal terms and conditions claim, the EEOC Intake Questionnaire would have sufficiently alerted the EEOC to each of Plaintiff's claims raised in the instant action.  However, even Plaintiff's unequal terms and conditions claim would be found to be adequately exhausted because the claim is "reasonably related" to Plaintiff's allegations of harassment and a hostile work environment in the Intake Questionnaire.  *See Mathirampuzha v. Potter*, 548 F.3d 70, 75 (2d Cir. 2008) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001).  Here, Plaintiff's unequal terms and conditions claim would be reasonably related because it "fall[s] within the scope of the EEOC investigation which can reasonably be expected to grow out of the [original] charge of discrimination."  *Id.* at 76.

27

11 Civ. 00342 (TLM), 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) *aff'd*, 752 F.3d 224 (2d Cir. 2014) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice.") (citations omitted).  Therefore, all non-federal claims contained in Plaintiff's Amended Complaint are hereby dismissed.

### F.  Leave to Amend

Although Plaintiff has not requested leave to amend or replead his Amended Complaint, the Court has considered whether Plaintiff should be given an opportunity to replead.  The Second Circuit has explained that "[a] *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted).  Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile.  As discussed in detail above, it is clear from the Amended Complaint that Plaintiff does not have any possibility of asserting plausible Title VII or ADEA claims for his failure to be promoted or perceived grievances.  *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 58 (2d Cir. 2002) (explaining that "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to

28

deny leave to amend. . . . [and that] [a]n amendment to a pleading is futile if the proposed claim

could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (citations

omitted).  Additionally, the Court has already taken into account Plaintiff's opposition papers, in

which Plaintiff attempted to provide additional factual support for his claims.  Because this

additional information proved insufficient to state a viable claim against Defendant, further

amendment would be futile.  Therefore, Plaintiff's claims are dismissed with prejudice.  *Hobson*

*v. Fischer*, No. 10 Civ. 5512 (SAS), 2011 WL 891314, at *6 (S.D.N.Y. Mar. 14, 2011).

**IV.     Conclusion**

        For the reasons set forth above, Defendant's motion to dismiss is GRANTED.  The Clerk

of the Court is respectfully directed to terminate the motion, Doc. 12, and close the case.

        It is SO ORDERED.


Dated:          July 20, 2015
                New York, New York


                                                    _____
                                                    Edgardo Ramos, U.S.D.J